IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY AIGNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) CIVIL ACTION | |
| vs. ) | |
| ) Case No. 1:26-CV-08937 | |
| 4M FOXMOOR CENTER, LLC and ) | |
| 4M FOXMOOR CENTER WEST, LLC ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW, KIMBERLY AIGNER, by and through the undersigned counsel, and files this, her Complaint against Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 et seq., based upon Defendants' 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff KIMBERLY AIGNER (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Montgomery, Illinois (Kendall County).

3. Plaintiff is disabled as defined by the ADA.

1

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5. Plaintiff uses a wheelchair for mobility purposes.

6. In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7. Defendant, 4M FOXMOOR CENTER, LLC (hereinafter "4M FOXMOOR CENTER, LLC"), is a domestic limited liability company that transacts business in the State of Illinois and within this judicial district.

8. Defendant, 4M FOXMOOR CENTER, LLC, may be properly served with process via its Registered Agent, to wit: c/o Estelle Mouroukas, Registered Agent, 1649 Montgomery Rd., Suite 1, Aurora, IL 60504.

9. Defendant, 4M FOXMOOR CENTER WEST, LLC (hereinafter "4M FOXMOOR CENTER WEST, LLC"), is a domestic limited liability company that transacts business in the State of Illinois and within this judicial district.

2

10.     Defendant, 4M FOXMOOR CENTER WEST, LLC, may be properly served with process via its Registered Agent, to wit: c/o Estelle Mouroukas, Registered Agent, 1649 Montgomery Rd., Suite 1, Aurora, IL 60504.

## FACTUAL ALLEGATIONS

11.     On or about May 16, 2026, Plaintiff was a customer at "Ozzie's Diner," a business located at 2290 Ogden Ave., Aurora, IL 60504, referenced herein as "Ozzie's Diner".  Attached is a receipt documenting Plaintiff's purchase.  See Exhibit 1.  Also attached is a photograph documenting Plaintiff's visit to the Property. See Exhibit 2.

12.     Plaintiff has previously been a customer of Ozzie's Diner three times.  Moreover, Plaintiff has also been a customer of Chelios' Pub and Grill, which is located at 2150 Ogden Ave, Aurora, IL 60504, over four times.  As such, Plaintiff has been a customer to multiple public accommodations spanning all parcels at least seven times.

13.     Defendant, 4M FOXMOOR CENTER, LLC, is the owner of the real property and improvements that Ozzie's Diner is situated upon and that is the subject of this action, referenced herein as the "Property."   It owns and operates the parcels 0731101015 and 1536299002.

14.     Defendant, 4M FOXMOOR CENTER WEST, LLC, is also an owner of the real property and improvements that are the subject of this action.  Defendant, 4M FOXMOOR CENTER WEST, LLC owns and operates parcel 1536299004.

15.     Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, are responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, 4M FOXMOOR CENTER, LLC, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate

the Defendants' requirement to comply with the ADA for the entire Property they own, including the interior portions of the Property which are public accommodations.   See 28 CFR § 36.201(b).

16.     Plaintiff's access to the Ozzie's Diner, located at 2290 Ogden Ave., Aurora, IL 60504, DuPage County Property Appraiser's property tax key number: 0731101015 and 1536299002 and Chelios Pub & Grill located at 2150 Ogden Ave, Aurora, IL 60504 Kane County Property Appraiser's property tax key number: 1536299004 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

17.     Although the Property is comprised of three parcels, it should be considered as one "Site" for purposes of this lawsuit and the ADA. Defendant, 4M FOXMOOR CENTER, LLC, owns the parcel identified as 0731101015 and 1536299002, and Defendant, 4M FOXMOOR CENTER WEST, LLC, owns the parcel identified as 1536299004. The three parcels share the same parking lot.  There are no notorious markings leading a reasonable individual to conclude the two parcels are separate, and the building which serves as a public accommodation spans all the parcels.  Furthermore, the design aesthetic throughout all parcels and the buildings are the same.

18.     Plaintiff lives 8 miles from the Property.

19.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

20.     Plaintiff has visited the Property seven times before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months, likely sooner, after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer of Ozzie's Diner, to be a return customer of Chelios Pub and Grill, to determine if and when the Property is made accessible and for Advocacy Purposes.

21.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access, as such, Plaintiff is deterred from returning to the Property as a customer until after the barriers to access identified in this Complaint are cured.

22.     Plaintiff travelled to the Property as a customer at least seven times before as a customer, personally encountered the barriers to access at the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

23.     Plaintiff personally encountered each and every barrier to access identified in Plaintiff's Complaint, and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

5

24. Plaintiff's inability to fully access the Property in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

<u>COUNT I</u>
<u>VIOLATIONS OF THE ADA AND ADAAG</u>

25. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

26. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iii) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

6

27.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

28.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

29.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

30.     The Property is a public accommodation and service establishment.

31.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

32.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

33.     The Property must be, but is not, in compliance with the ADA and ADAAG.

34.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in her capacity as a customer at the Property and as an independent advocate for the disabled, but

could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

35.     Plaintiff intends to visit the Property as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

36.     Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, have discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

37.     Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

38.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS**

(i)     In front of Ozzy's Diner, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(ii)    In front of Ozzy's Diner, the two accessible parking spaces have a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(iii)   In front of Ozzy's Diner, the shared access aisle has a vertical rise of approximately 3 inches and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to safely traverse from the accessible parking space to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip.  At a minimum, this danger causes Plaintiff anxiety just for using this accessible parking space.

(iv)    As a result of the barrier to access referenced in iii, the Property lacks an accessible route from the accessible parking spaces to the accessible entrance

of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(v) In front of Ozzy's Diner, when one parks in either of the two accessible parking spaces, to get to the nearest ramp, one would need to traverse into the vehicular way into oncoming traffic and behind other parked vehicles, as such these two accessible parking spaces are not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(vi) Adjacent to Ozzy's Diner, the Property has an accessible ramp leading from the two accessible parking spaces that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

(vii) Adjacent to Ozzy's Diner, there is an opening in the ground surfaces of the accessible ramp running nearly the entire length of the accessible ramp with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's

10

wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Sections 302.3 and 405.4 of the 2010 ADAAG Standards.

(viii) In front of Unit 2258 and Unit 2250, one of the two accessible parking spaces has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(ix) In front of Unit 2258 and Unit 2250, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface. Thus, causing a large vertical drop from the edge of her van lift to the floor, causing Plaintiff to fall and injure themselves.

(x) In front of Unit 2258 and Unit 2250, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create

an unlevel surface. Thus, causing a large vertical drop from the edge of her van lift to the floor, causing Plaintiff to fall and injure themselves.

(xi)     In front of Unit 2258 and Unit 2250, the bottom edges of the signs identifying the two accessible parking spaces are at a height below 60 inches from the floor in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(xii)    In front of Unit 2258 and Unit 2250, the two accessible parking spaces have vertical rises in excess of ¼ inch and are in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to safely traverse from the accessible parking space to the accessible entrance as the tire of the wheelchair could get snagged on a vertical rise causing it to tip. At a minimum, this danger causes Plaintiff anxiety just for using this accessible parking space.

(xiii)   In front of Unit 2258 and Unit 2250, the two accessible parking spaces have openings with widths in excess of ½ inch in violation of Sections 302.3 and 502.4 of the 2010 ADAAG standards. This barrier to access could cause the wheel of Plaintiff's wheelchair to get lodged in the opening causing difficulty and risk having the wheelchair tip over in a struggle to get removed from the gap.

(xiv)    In front of Unit 2258 and Unit 2250, due to a failure to enact a policy of proper parking lot maintenance, there is an opening in the ground surfaces of the accessible ramp with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the

potential for Plaintiff's wheelchair to tip over in violation of Sections 302.3 and 405.4 of the 2010 ADAAG Standards.

(xv)     In front of Unit 2258 and Unit 2250, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the accessible ramp have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property as Plaintiff's wheel could get snagged on the vertical rise and cause the wheelchair to tip.

(xvi)    There are multiple buildings on the site which are each public accommodation, yet there lacks a single accessible route connecting the buildings, due to a curb with a vertical rise of approximately 3 inches and a lack of a nearby accessible ramp, this is a violation of Section 206.2.2 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the public features on the site.

(xvii)   In front of Liquor Lane, which is Unit 2178, the accessible parking space does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

(xviii)    In front of Liquor Lane, which is Unit 2178, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(xix)    In front of Liquor Lane, which is Unit 2178, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the accessible ramp have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property as Plaintiff's wheel could get snagged on the vertical rise and cause the wheelchair to tip.

(xx)    In front of Liquor Lane, which is Unit 2178, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

(xxi)    In front of Liquor Lane, which is Unit 2178, the Property has an accessible ramp that indentations at the base which promote puddling, which represents a slipping hazard and is in violation of Sections 302.1 and 405.9 of the 2010

14

ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xxii)  In front of Liquor Lane, which is Unit 2178, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

(xxiii)  In front of the entrance to Unit 2174, due to a failure to enact a policy of proper maintenance, there is an opening in the ground surfaces with a width exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

(xxiv)  The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. There is a total of 258 parking spaces in the shared parking lot between all parcels, which require a minimum of seven accessible parking spaces, including two van accessible parking spaces, but there are only five accessible parking spaces total with no van accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number

15

of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

(xxv) There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

(xxvi) Inside Ozzie's Diner, the inner door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent wall in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door. The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

(xxvii) Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**OZZIE'S DINER RESTROOMS**

(xxviii) Due to the placement of the flush control mechanism within 12" below the rear grab bar, there is inadequate space between the grab bar and objects placed above the grab bar in violation of Section 609.3 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to safely

16

transfer from the wheelchair to the toilet and back.

(xxix)    Due to the placement of the flush control mechanism, the rear grab bar no longer complies with the 1 1/2 inch spacing requirement set forth in Section 609.3 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff and other individuals with disabilities to utilize the accessible toilet safely as the grab bars are blocked and/or impeded by the objects placed on or about the grab bars by Defendant.

(xxx)    The accessible toilet stall door is not self-closing and violates Section 604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely and privately utilize the restroom facilities.

(xxxi)    The accessible toilet stall door swings into the clear floor space required by the stall and violates Section 604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

(xxxii)    The door exiting the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent stall door, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

(xxxiii) The lavatories and/or sinks in the restrooms have exposed pipes and surfaces and are not insulated or configured to protect against contact in violation of Section 606.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the sink as the pipes underneath the sink typically have sharp surfaces and/or hot pipes, and since individuals in wheelchairs use a sink while seated, their legs are particularly vulnerable to these threats.

(xxxiv) The soap dispenser in the restroom is placed above the sink and is thus located higher than 44 inches above the finished floor which is outside the prescribed obstructed vertical reach ranges set forth in Section 308.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the soap dispenser as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

(xxxv) Due to the placement of a toilet paper dispenser within 12" above the side grab bar, there is inadequate space between the grab bar and objects placed above the grab bar in violation of Section 609.3 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to safely transfer from the wheelchair to the toilet and back.

39. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

40. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

41.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

42.     All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA as the modifications necessary to cure the barriers to access identified in paragraph 38 of this Complaint are listed in 28 C.F.R. § 36.304 as "readily achievable".

43.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

44.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, have the financial resources to make the necessary modifications.  According to the DuPage County and Kane County Property Appraisers, the collective assessed value of all the parcels comprising the Property is $3,814,344.00

45.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

46.     Upon information and good faith belief, the Property has been altered since 2010.

47.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with

19

the 1991 ADAAG standards.

48.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

49.     Plaintiff's requested relief serves the public interest.

50.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC.

51.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

52.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, from continuing their discriminatory practices;

20

(c)     That the Court issue an Order requiring Defendants, 4M FOXMOOR CENTER, LLC and 4M FOXMOOR CENTER WEST, LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: July 28, 2026.

Respectfully submitted,


THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com